IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DIRECT BENEFITS, LLC, *et al.*, | * | |
| Plaintiffs, | * | |
| vs. | * | Civil Action No. RDB-13-1185 |
| TAC FINANCIAL, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiffs, Direct Benefits, LLC and Andrew C. Gellene, move this Court to reconsider its July 10, 2019 Memorandum Opinion and Order (ECF Nos. 163, 164) denying their Amended Motion for Permission to File a Fourth Amended Complaint (ECF No. 154), which sought to reinstate three of Defendant TAC Financial, Inc.'s outside directors, Rhett McNulty, Clark McNulty, and Daniel Lindberg, as defendants (the "Motion for Reconsideration") (ECF No. 173). After considering the Motion and the response thereto (ECF No. 177), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). For the reasons stated herein, the Court DENIES Plaintiffs' Motion for Reconsideration.

### **FACTUAL BACKGROUND**[1]

This lawsuit arises out of Plaintiffs' allegations that Defendant TAC Financial, Inc. ("TAC") engaged in, *inter alia*, the illegal and fraudulent sale of securities, fraud, and breach of warranty in connection with the negotiation and execution of an Asset Purchase Agreement

---

[1] The following facts are taken from Plaintiffs' Third Amended Complaint. ECF No. 77. Notably, these facts are largely identical to the facts contained in the proposed Fourth Amended Complaint (ECF No. 156-1) and the omitted version of the proposed Fourth Amended Complaint (ECF No. 173-2) that is at issue here.

1

("APA") between Plaintiffs and TAC in 2011. ECF No. 77. Plaintiff Direct Benefits, LLC ("DB") is a limited liability company in the business of providing prepaid cards to the public. *Id.* at 4–5, ¶ 4. Plaintiff Andrew C. Gellene is the president of DB. *Id.* at 3, ¶ P2.

Around October 2010, Mr. Gellene, on behalf of DB, began searching for a strategic partner to assist DB with establishing and maintaining financial processing systems. *Id.* at 4, ¶ 3. In December 2010, Mr. Gellene was referred to TAC and entered into discussions with TAC's CEO, Roy Eder, to determine the possibility of a mutually beneficial business arrangement between the entities. *Id.* at 5, ¶¶ 6–7. In an introductory call in late December 2010 and a letter of intent in January 2011, Mr. Eder characterized TAC as a "financial and employee benefit services company" which provided prepaid cards, mobility services, an online bill pay program, and affordable health care programs to customers. *Id.* ¶ 8. On January 5, 2011, the parties signed a non-disclosure agreement and, shortly thereafter, TAC proposed that DB become a "Value Added Reseller" for TAC. *Id.* at 5–6, ¶ 9. However, rather than becoming a Value Added Reseller, DB later requested that TAC consider permitting DB to sell and transfer its assets and business to TAC in exchange for TAC providing cash and stock, and TAC agreed to this request. *Id.* at 6, ¶ 10. The parties ultimately executed the APA on April 14, 2011, with TAC agreeing to purchase DB's principal assets, including 7,000 prepaid debit card accounts and computer programming software developed by DB and Mr. Gellene, and to pay DB $50,000. *Id.* at 4, ¶¶ 1–2. TAC also agreed to employ Mr. Gellene as the vice president of product development for which he would receive an annual salary in addition to yearly bonuses and stock options. *Id.* ¶ 2.

During the course of the negotiations, Plaintiffs allege that Mr. Eder and other officers and employees of TAC, under the supervision of the Board of Directors, made false, misleading, and incomplete representations to DB regarding TAC's business operations, assets, and liabilities to

induce DB to transfer its assets and business. *Id.* at 6, ¶ 11. Among other misrepresentations, Plaintiffs allege that TAC misrepresented the number of revenue generating cards it had in its portfolio, its gross profit margin for 2010, its potential for growth, and its projected revenues. *Id.* at 6–11, ¶¶ 12–13. Plaintiffs also allege that TAC misrepresented the number of members enrolled in its healthcare and automobile insurance programs and misled Plaintiffs by purporting to be a "global company" with members in various countries and territories. *Id.* at 12, ¶¶ 14–16.

In addition to these misrepresentations, Plaintiffs allege that TAC omitted a number of key facts during the due diligence process: (1) TAC was experiencing a substantial reduction in income from its primary revenue source; (2) TAC experienced a 70% decline in card usage from May 2010 to February 2011; (3) TAC owed debt in an amount exceeding $300,000 to its card processing service provider, FIS Global, and was in default under their agreement; (4) TAC owed debt in an amount exceeding $180,000 to its managerial employees; and (5) at the time of execution of the APA, TAC did not have the ability to fulfill its obligation to pay DB $50,000 or to assume the operating costs of DB's business. *Id.* at 13–16, ¶¶ 19–23.

Upon commencing employment with TAC, Mr. Gellene discovered these alleged misrepresentations and omissions through review of internal documents. *See id.* at 6–14, ¶¶ 12–21. On March 26, 2013, Plaintiffs notified TAC of the alleged misrepresentations and omissions and Mr. Gellene resigned his employment with TAC. *Id.* at 35, 39, ¶¶ 110, 131.

### PROCEDURAL BACKGROUND

The original Complaint was filed on April 22, 2013, ECF No. 1, and amended as of right on May 3, 2013, ECF No. 6. On February 20, 2014, Judge Russell granted a Motion to Dismiss as to the "Outside Directors," who are the subjects of the omitted proposed Fourth Amended Complaint that is currently at issue. ECF No. 48. At that time, Judge Russell found that "Plaintiffs

3

have failed to allege officer and director liability for any of the remaining individual Defendants. It is well-settled that allegations regarding fraud against individual defendants requires 'facts supporting a strong inference of scienter as to each defendant.'" *Id.* at 33 (quoting *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 182 (4th Cir. 2009)). On the same day, Plaintiffs filed a Second Amended Complaint. ECF No. 50. Defendants answered on March 6, 2014 and, in addition, filed a counterclaim. ECF No. 51.

On April 25, 2014, Plaintiffs filed a Second Motion for Leave to Amend the Complaint, ECF No. 64, and a Supplement to the Second Motion, ECF No. 65. Defendants then filed a second Motion to Dismiss. ECF No. 68. Judge Motz[2] again granted the Motion to Dismiss as to the Outside Directors and stated: "[T]he motion to dismiss filed by the Outside Directors claims against them in the second amended complaint is granted. Plaintiff[s] ha[ve] not alleged facts that would establish that the Outside Directors are liable under a 'court control liability' theory." ECF No. 75 at 1. On the same day, Judge Motz granted the Second Motion for Leave to Amend, ECF Nos. 75, 76, and Plaintiffs filed the Third Amended Complaint, ECF No. 77. Defendants Eder and TAC answered the Third Amended Complaint on July 10, 2014. ECF No. 78.

From July 2014 through October 2014, there were various discovery disputes, conferences with the Court, and other ancillary matters. On October 31, 2014, Plaintiffs filed a Motion for Partial Summary Judgment, ECF No. 98, and Defendants Eder and TAC filed a Cross-Motion for Partial Summary Judgment on Count III of the Third Amended Complaint on December 1, 2014, ECF No. 104. On December 3, 2014, Plaintiffs filed the initial Motion for Leave to File a Fourth Amended Complaint. ECF No. 105.

---

[2] On June 10, 2014, the case was reassigned from Judge Russell to Judge Motz.

On February 20, 2015, the Court administratively closed the case due to a bankruptcy filing by Defendant TAC. ECF No. 125. Upon Plaintiffs' Motion to Restore Case filed on October 18, 2018, ECF No. 126,[3] the Court reinstated the action to active status on March 12, 2019, ECF No. 129.[4]

On June 18, 2019, the Court held a telephone conference call with counsel and issued a paperless order directing Plaintiffs to file an Amended Motion to File a Fourth Amended Complaint no later than June 25, 2019. ECF No. 153. Plaintiffs then filed the Amended Motion for Permission to File a Fourth Amended Complaint and supporting documents on June 25, 2019. ECF Nos. 154–58. On June 28, 2019, Defendants Eder and TAC filed a Motion to Strike Plaintiffs' Amended Motion. ECF No. 160. In a Memorandum Opinion and Order dated July 10, 2019, this Court denied Plaintiffs' Amended Motion for Permission to File a Fourth Amended Complaint and Defendants' Motion to Strike. ECF Nos. 163, 164.

On July 29, 2019, Plaintiffs filed the instant Motion for Reconsideration, seeking reconsideration of the Court's July 10, 2019 decision. ECF No. 173. Defendants Eder and TAC filed an opposition on August 2, 2019. ECF No. 177. The Court need not wait for a reply. This matter is now briefed, and the Court has reviewed Plaintiffs' Motion for Reconsideration, as well as the response thereto. For the following reasons, Plaintiffs' Motion for Reconsideration (ECF No. 173) is DENIED.

---

[3] On October 19, 2018, the case was reassigned from Judge Motz to Judge Bennett.

[4] On June 11, 2019, this case was referred to United States Magistrate Judge A. David Copperthite for all non-dispositive matters and scheduling. ECF No. 150.

## STANDARD OF REVIEW

Plaintiffs move for reconsideration pursuant to Federal Rule of Civil Procedure 54(b), which governs reconsideration of an interlocutory order. *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F.Supp.2d 612, 618 (D.Md. 2013). Rule 54(b) provides that "any order or other decision . . . that . . . does not end the action as to any of the claims or parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b). A motion for reconsideration brought pursuant to this Rule must be filed no later than fourteen days after entry of the order per Local Rule 105.10. Loc.R. 105.10 (D.Md. 2018); *see also Humane Soc'y of U.S. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. DKC 13-1822, 2017 WL 1426007, at *3 (D.Md. Apr. 21, 2017).

Although the precise standard governing a motion for reconsideration of an interlocutory order is unclear, the United States Court of Appeals for the Fourth Circuit has articulated that Rule 54(b) motions "are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003)). Courts frequently look to the standards set forth in Rules 59(e) and 60(b) for guidance when considering Rule 54(b) motions for reconsideration. *Carrero v. Farrelly*, 310 F.Supp.3d 581, 584 (D.Md. 2018) (quoting *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 449 (D.Md. 2015)). "Under Rule 59(e), a motion to amend a final judgment may be granted only '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *Id.* (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)). Similarly, "under Rule 60(b), a court may grant relief from a final judgment or order for the following reasons: '(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party;

6

(4) voidness; (5) satisfaction; or (6) any other reason that justifies relief.'" *Id.* (quoting *Butler*, 307 F.R.D. at 449).

"'[A] motion to reconsider is not a license to reargue the merits or present new evidence' that was previously available to the movant." *Id.* (quoting *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F.Supp.2d 676, 677 n.1 (D.Md. 2001)). "Resolution of [a] motion [for reconsideration pursuant to Rule 54(b)] is committed to the discretion of the district court and the goal is to reach the correct judgment under law." *Lynn*, 953 F.Supp.2d at 618–19 (citations and internal quotation marks omitted).

## DISCUSSION

Plaintiffs ask this Court to reconsider its July 10, 2019 decision to deny Plaintiffs' Amended Motion for Permission to File a Fourth Amended Complaint on the basis that Plaintiffs "mistakenly attached" an alternate, incorrect version of their proposed Fourth Amended Complaint, which was a "clear error" that "had a direct impact on the Court's decision on the Amended Motion." ECF No. 173-18 at 5, 7–8. According to Plaintiffs, the proposed Fourth Amended Complaint that was filed (ECF No. 156-1) erroneously omitted Count VIII, which contained new allegations in support of a claim for officers and directors' liability against the Outside Directors for securities fraud violations allegedly committed by Defendant Eder. *Id.* at 4. Plaintiffs now request that the Court reconsider its decision and, in doing so, that it rely on the "omitted proposed Fourth Amended Complaint" containing Count VIII that Plaintiffs intended to file. *Id.* at 7–8. Defendants oppose reconsideration on numerous grounds, including that: (1) Plaintiffs' Motion improperly attempts to raise new arguments and relitigate prior unsuccessful arguments; (2) Plaintiffs still fail to demonstrate good cause to file a Fourth Amended Complaint and such an amendment would be futile; and (3) Plaintiffs' Motion is untimely. The Court agrees.

As stated, a motion for reconsideration must be filed no later than fourteen days after entry of the order pursuant to this Court's Local Rule 105.10. Loc.R. 105.10 (D.Md. 2018). This Court has held that untimeliness is sufficient to warrant denial of a motion for reconsideration. *E.g.*, *Humane Soc'y of U.S.*, 2017 WL 1426007, at *4 (denying the motion for reconsideration where it was untimely filed and the plaintiff "offer[ed] no persuasive justification for suspending Local Rule 105.10"); *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC 10-3517, 2011 WL 6837656, at *2 (D.Md. Dec. 28, 2011) (denying the motion for reconsideration for untimeliness and lack of merit). Consistent with Plaintiffs' clear lack of consideration and regard for this Court's Local Rules, Plaintiffs' Motion was filed on July 29, 2019, nineteen days after the Court's July 10, 2019 Memorandum Opinion and Order denying Plaintiffs leave to file a Fourth Amended Complaint. ECF No. 173. Plaintiffs' Motion is, therefore, untimely and must be denied.

Assuming *arguendo* that Plaintiffs' Motion was timely, it meets the same fate. Plaintiffs contend that they have shown good cause to justify filing a Fourth Amended Complaint and that an amendment would neither be futile nor prejudicial to Defendants. ECF No. 173-18 at 8–17. Not only are these arguments inappropriate for reconsideration because they have either been previously litigated or have only just been introduced,[5] *Coulibaly*, 2011 WL 6837656, at *2, but they are wholly unpersuasive.

With respect to good cause, "[t]he primary consideration [of the Court] . . . is the diligence of the movant. Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'" *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D.Md. 2002) (quoting *W. Va. Hous.*

---

[5] Plaintiffs have already previously litigated the futility and prejudice issues in their brief in support of the Amended Motion for Permission to File a Fourth Amended Complaint and they failed to address good cause in that filing. *See* ECF No. 155 (addressing only undue delay and bad faith, futility, and prejudice to Defendants).

*Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001)). Plaintiffs claim that they were diligent in bringing their Amended Motion for Permission to File a Fourth Amended Complaint because they "were without evidence sufficient to sustain claims of negligence against the TAC directors prior to reviewing the 70,000 documents delivered to them between August and November 2014." ECF No. 173-18 at 12. However, it is evident that Plaintiffs have been in possession of the documents they now rely upon for their new control liability theory since November 2014 at the latest, yet they did not include their new Count VIII allegations in their initial Motion for Leave to File a Fourth Amended Complaint filed on December 3, 2014 (ECF Nos. 105, 105-3 at 40) and have provided no reasonable explanation for the failure to do so. Thus, Plaintiffs have failed to show good cause to justify leave to file a Fourth Amended Complaint.

As to futility, Plaintiffs reiterate that amendment would not be futile, but they once again fail to allege sufficient facts to support fraud allegations against the Outside Directors. *Id.* at 13–17. Although Plaintiffs now attempt to frame their new Count VIII allegations under a "negligent" or "reckless" theory, *id.* at 13, the allegations clearly remain grounded in fraud and Plaintiffs must therefore allege "facts supporting a strong inference of scienter as to each defendant" in order to bring their proposed allegations against the Outside Directors, *Matrix*, 576 F.3d at 182. As noted in the July 10, 2019 Opinion, "in a private securities fraud action, . . . 'an inference of scienter must be more than merely plausible or reasonable, it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" ECF No. 163 at 4 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)). As Defendants correctly note, even the omitted proposed Fourth Amended Complaint that Plaintiffs urge this Court to consider fails to allege that the Outside Directors knew Defendant Eder committed securities fraud violations in

9

connection with the APA. ECF No. 173-2 at 36–42, ¶¶ 119–42; ECF No. 177 at 10. Once again, Plaintiffs merely point to emails suggesting that the Outside Directors may have had questions about Defendant Eder's representations to Plaintiffs to support their allegations, but these facts fail to show "a mental state embracing intent to deceive, manipulate, or defraud" as required. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). For these reasons, the Court finds that amendment would be futile.

Finally, regarding prejudice, Plaintiffs once again assert that there will be "little prejudice, if any, to the [D]efendants" because "[t]he Order dismissing the individual defendants from the case was and remains interlocutory" and "[t]he facts upon which the amended allegations are based are the facts central to this litigation." ECF No. 173-18 at 17–18. However, as the Court previously found, such arguments are incredulous. Permitting Plaintiffs to reinstate what is now a six-year old claim against the Outside Directors would, no doubt, prejudice those individuals.

Accordingly, because Plaintiffs' Motion was filed well beyond the fourteen days permitted for filing a motion for reconsideration by Local Rule 105.10, the Motion is DENIED. Even if the Motion had been timely filed, Plaintiffs have failed to demonstrate good cause to justify filing a Fourth Amended Complaint or show that amendment would not be futile or prejudicial.

## CONCLUSION

In conclusion, for the reasons stated herein, Plaintiffs' Motion for Reconsideration (ECF No. 173) is DENIED. A separate Order will follow.

Date: 13 August 2019

A. David Copperthite
United States Magistrate Judge